EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION,
Plaintiff–Appellant,

v.

FRANK'S NURSERY & CRAFTS,
INC., Defendant–Appellee.

No. 97–1698.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 28, 1998.

Decided April 23, 1999.

**452**

Barbara L. Sloan (argued and briefed), Equal Employment Opportunity Commission, Office of the General Counsel, Washington, D.C., for Plaintiff–Appellant. Charles C. DeWitt, Jr. (argued and briefed), Brian B. Smith (briefed), DeWitt, Balke & Vincent, Detroit, Michigan, for Defendant–Appellee. Eric Quinn Gery, McGuiness & Williams, Washington, DC, for amicus curiae.

Before: NELSON, CLAY, and GIBSON,* Circuit Judges.

CLAY, J., delivered the opinion of the court, in which JOHN R. GIBSON, J., joined. DAVID A. NELSON, J. (pp. 468–71), delivered a separate opinion concurring in part and dissenting in part.

---

* The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

CLAY, Circuit Judge.

The Equal Employment Opportunity Commission ("EEOC") appeals the order of the district court both dismissing its claims brought on behalf of Carol Adams ("Adams") and a class of similarly situated employees under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(1) (1998) ("Title VII"), and granting the motion of Defendant Frank's Nursery & Crafts ("Frank's") to compel Adams to enter binding arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4 (1998) ("FAA"). For the reasons set forth below, we REVERSE.

**I.**

On August 16, 1993, Adams, an African American, applied for a position with Frank's, a retailer of lawn and garden products, as an Executive Assistant in the company's Detroit, Michigan facility. Before it would consider Adams for the position, however, Frank's required Adams, as it did all other applicants, to complete and sign an application form that provided for compulsory arbitration of any and all employment claims. Specifically, by signing the form, applicants averred:

> I understand and agree that any claim I may wish to file against the Company or any of its employees or agents relative to my employment or termination of employment (including but not limited to any claim for any tort, discrimination, breach of contract, violation of public policy or statutory claim) must be filed no more than six months after either occurrence of which I am complaining or the termination of my employment, whichever occurs first. I specifically agree not to commence any claim more than six months after the date of termination of my employment and waive any statutes of limitation to the contrary. Any and all claims will be submitted for

binding and final arbitration before the American Arbitration Association; arbitration will be the exclusive remedy for any and all claims unless prohibited by applicable law.

(J.A. at 28.) Frank's hired Adams on August 30, 1993 as the Executive Assistant to Leonard Cohen, then-Vice President of the Human Resources Department. In addition to assisting Cohen, Adams provided administrative support to the Director of Human Resources and the Manager of Human Resources in her capacity as Executive Assistant.

In January 1995, Frank's replaced Cohen with Carol Cox, who is white. Upon becoming Vice President of Human Resources, Cox created an Executive Administrative Assistant position. Cox did not hire Adams for the position,[1] claiming that she needed to hire a more highly qualified individual for the job. Cox hired Lorraine Kryszak, an outside applicant who is also white. Adams continued to work for the Director of Human Resources and the Manager of Human Resources and continued to receive the same pay and benefits. On March 14, 1995, Kryszak's first day of work, Adams filed a complaint with the EEOC alleging that Frank's bypassed her for promotion to the position of Executive Administrative Assistant because of her race. Adams subsequently resigned from Frank's on April 4, 1995.

The EEOC investigated the matter and issued a determination on February 9, 1996 which concluded that Frank's bypassed Adams for promotion because of her race and that the arbitration clause in the employment application signed by Adams unlawfully denied individuals their statutorily created rights. The EEOC found that Frank's had failed to establish that Adams was not qualified for the position and that Kryszak was more qualified than Adams. On October 30, 1996, after attempts at conciliation with Frank's had

failed, the EEOC filed suit in the district court, alleging that Frank's had engaged in unlawful employment practices by (1) bypassing Adams for promotion to Executive Administrative Assistant because of her race; and (2) requiring Adams and other applicants to sign and comply with an application for employment that requires arbitration of statutory rights afforded them by Title VII.

In its complaint, the EEOC requested (1) a permanent injunction enjoining Frank's from engaging in employment discrimination on the basis of race; (2) a permanent injunction enjoining Frank's from requiring prospective applicants or employees to sign an arbitration agreement limiting the right to sue under Title VII; (3) an order requiring Frank's to institute and carry out policies, practices and programs providing equal employment opportunities to African Americans and eradicating the effects of past and present employment discrimination; and (4) an order requiring Frank's to "make whole" Adams by providing backpay with prejudgment interest, as well as compensatory damages beyond backpay and punitive damages. Adams did not intervene in the EEOC's lawsuit, nor did she file a claim in arbitration or otherwise attempt to privately settle a claim of discrimination against Frank's. The parties do not dispute that more than six months have passed since Frank's failed to promote Adams or since Adams terminated her employment, and that under the terms of the agreement to arbitrate included in Adams' employment application, time would bar any attempt by Adams to seek relief through arbitration.

On November 21, 1996, without answering the EEOC's complaint and before discovery could begin, Frank's moved the district court to compel Adams to arbitrate in accordance with the terms of the application for employment Adams signed in 1993

---

**1.** The EEOC determined that Frank's did not even allow Adams to submit a formal application for the position.

and pursuant to the Federal Arbitration Act, 9 U.S.C. § 4 (1998) ("FAA"). The EEOC filed a response in opposition, and Frank's filed a reply brief. In its reply brief, Frank's asked the district court to grant summary judgment in favor of Frank's on the EEOC's claim of classwide discrimination on the grounds that the challenged employment application is enforceable as a matter of law.

The district court issued a Memorandum Opinion and Order on April 21, 1997, granting Frank's' motions for summary judgment and to compel arbitration and dismissing the EEOC's complaint in its entirety. In its opinion, the district court arrived at three distinct conclusions affecting this appeal. First, the district court deemed enforceable, in light of *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the arbitration provision in the employment application used by Frank's.[2] Second, the district court held that the EEOC was bound by Adams' agreement to arbitrate in its effort to bring an employment discrimination claim on her behalf. Third, the district court concluded that while, as a general principle, the EEOC could sue for injunctive relief on behalf of a class of individuals, the EEOC could not do so in this case because it had not identified a class of individuals that suffered discrimination on the basis of race under Frank's' employment policies. The EEOC filed timely notice of appeal to this Court on June 20, 1997.[3]

**II.**

We review de novo a district court's determination that a dispute is arbitrable. *See M & C Corp. v. Erwin Behr GmbH & Co.*, 143 F.3d 1033, 1037 (6th Cir.1998). Moreover, questions of statutory construction are subject to de novo review, *see United States v. Moore*, 73 F.3d 666, 668 (6th Cir.1996), as are questions regarding the proper interpretation of a contract. *See First Am. Nat'l Bank v. Fidelity & Deposit Co.*, 5 F.3d 982, 984 (6th Cir.1993).

Before this Court, the EEOC challenges only two of the district court's conclusions. First, the EEOC argues that the district court erred by holding that Adams' agreement to arbitrate precludes the EEOC from recovering "substantive relief" such as compensatory and punitive damages, and back pay with prejudgment interest. Second, the EEOC argues that the district court erred by barring the EEOC from recovering general injunctive relief aimed at stopping discrimination on the basis of race at Frank's because the EEOC failed to identify a class of individuals who had suffered such discrimination. It is important to note before we proceed that the EEOC does not challenge on appeal the conclusion that courts may enforce arbitration clauses included in employment applications that job applicants must sign before the employer will consider hiring them for the jobs sought.[4] Accordingly,

---

**2.** Although *Gilmer* involved a claim under the Age Discrimination in Employment Act ("ADEA"), most of the circuits that have addressed the issue have decided that *Gilmer* applies to Title VII actions with equal force. *See, e.g., Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 837 (8th Cir.1997); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 308 (6th Cir.1991). The Ninth Circuit has concluded that *Gilmer* does not extend to Title VII cases. *See Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1198–1200 (9th Cir.), *cert. denied,* — U.S. —, 119 S.Ct. 445, 142 L.Ed.2d 399 (1998).

**3.** Frank's sought en banc review limited to the issue of whether we could assert jurisdiction over this appeal. This Court denied Frank's' petition for a hearing en banc on February 13, 1998.

**4.** Although the EEOC, for the purposes of this appeal, assumes the enforceability of arbitration agreements such as the one set forth in the employment application used by Frank's, the EEOC asserts that it has taken the position "that federal law prohibits the enforcement of arbitration agreements that require an individual, in this statutory context, to agree prospectively to submit any future claim to arbitration as a condition of initial or

we express no opinion on the merits of that particular claim.

## III.

This case requires us to address the extensive power of the EEOC to remedy unlawful employment discrimination under Title VII, and to consider specifically whether a single employee may, by entering into a private arbitration agreement with her employer, divest the EEOC of that congressional grant of authority. The district court in the present action asserted that because Adams signed away her right to sue for substantive relief under Title VII in her employment application, the EEOC cannot pursue such relief where its claim against Frank's depends on Adams' substantive claim of discrimination. The district court concluded, and Frank's argues, that, under the FAA, "to the extent that Adams is seeking substantive relief for alleged racial discrimination, she must proceed to arbitration per her signed agreement and the EEOC may not pursue the same claim for the same relief on her behalf in this Court." Given the plain language of Title VII and the unequivocal intent of Congress that the EEOC should possess an independent right to eradicate employment discrimination on behalf of the public interest, we cannot agree.

## A. EEOC AUTHORITY IN TITLE VII CASES

In order to analyze the role of the EEOC in addressing and rectifying unlawful employment practices, and in order to understand Congress' intent in balancing the implementation of the public interest and the enforcement of private rights in the context of Title VII proceedings, we must review at the outset the applicable statutory structure and legislative history of Title VII. These make clear that Title VII itself imposes or allows very few limitations on the EEOC's power to sue in federal court to eliminate, for the public benefit, unlawful employment discrimination.

### 1. Title VII Enforcement Scheme

■ Under Title VII, once an individual files a charge alleging unlawful employment practices, the EEOC must investigate the charge and determine whether there is "reasonable cause" to believe that it is true. *See* 42 U.S.C. § 2000e–5(b) (1998). By filing a charge, an individual does not file a complaint seeking relief, but merely informs the EEOC of possible discrimination. *See EEOC v. Shell Oil Co.*, 466 U.S. 54, 68, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984). If the EEOC finds reasonable cause to believe discrimination occurred, it must "endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* If the EEOC cannot secure an acceptable conciliation agreement from the employer, it "may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge." 42 U.S.C. § 2000e–5(f) (1998). If the court agrees with the EEOC that the defendant-employer has intentionally engaged in unlawful discrimination, the court may order injunctive relief and such remedies as the reinstatement or hiring of employees, back pay, and compensatory and punitive damages. *See* 42 U.S.C. §§ 1981a(a)(1), 2000e–5(g)(1) (1998).

■ While allowing the EEOC to bring suit against employers in federal court, Title VII retains a private cause of action—apart from any action the statute entitles the EEOC to bring—for the individual victim of employment discrimina-

---

continued employment." (Appellant's Br. at 9.) Indeed, there is some question as to whether courts may enforce as an employment "contract" an employment application form in which an employee signs away statutory rights but receives no consideration or no promise in return. *See Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 475, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (noting that general principles of contract law govern the interpretation of arbitration agreements).

tion. Where the EEOC investigates a charge and, after 180 days, either concludes that there is no "reasonable cause" to believe it is true or fails to make a finding of "reasonable cause," the EEOC must notify the aggrieved individual. *See* 42 U.S.C. § 2000e–5(f)(1) (1998). If the EEOC finds "reasonable cause" to believe an employer has violated Title VII but chooses not to bring suit on behalf of the federal government, the EEOC will issue a "notice of right to sue" on the charge to the aggrieved party. *See* 29 C.F.R. § 1601.28(b) (1998). Or, if after 180 days the EEOC fails to make a "reasonable cause" finding, the aggrieved individual may request a "right to sue" letter from the EEOC. *See id.* An individual may not file suit under Title VII if she does not possess a "right to sue" letter from the EEOC. *See Rivers v. Barberton Bd. of Educ.,* 143 F.3d 1029, 1032 (6th Cir.1998).

■■■ Therefore, for 180 days after the filing of a charge, the EEOC retains "exclusive" jurisdiction over the subject matter of that charge. *General Tel. Co. v. EEOC,* 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). This 180–day period is "critical to the statutory scheme." *EEOC v. Hearst Corp.,* 103 F.3d 462, 466 (5th Cir.1997). During that period, the EEOC may distinguish between those cases in which it believes it may vindicate the public interest by filing suit itself, and those in which it chooses not to file suit and instead leaves to the individual aggrieved the decision of whether to file suit in order to advance her own interests. Indeed, it is only at the termination of the 180–day period of exclusive jurisdiction that a "complainant whose charge is not dismissed or promptly settled or litigated" may bring a lawsuit. *See Occidental Life Ins. v. EEOC,* 432 U.S. 355, 361, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). Not only does Title VII bar an aggrieved individual from suing a private employer in federal court during that period without authorization from the EEOC, *see Hearst,* 103 F.3d at 466, it bars an aggrieved individual from

ever bringing such a suit should the EEOC choose to sue on its own. In such cases, the only right Title VII reserves to an aggrieved individual is the right to intervene in the EEOC's action. *See* 42 U.S.C. § 2000e–5(f)(1) (1998).

■■■ Moreover, an aggrieved individual may not withdraw her charge without the consent of the EEOC. *See* 29 C.F.R. § 1601.10 (1998). If the EEOC denies an individual consent to withdraw her charge, the EEOC may proceed under Title VII to prosecute its own civil action against an employer on the basis of that charge. *See EEOC v. McLean Trucking,* 525 F.2d 1007, 1009 & n. 2 (6th Cir.1975). Indeed, the EEOC depends on the filing of charges for notification of possible discrimination. *See Shell Oil,* 466 U.S. at 69. Consequently, courts have observed that an individual may not contract away her right to file a charge with the EEOC, as such contracts are void as against public policy. *See, e.g., EEOC v. Cosmair Inc.,* 821 F.2d 1085, 1090 (5th Cir.1987); *EEOC v. Goodyear Aerospace Corp.,* 813 F.2d 1539, 1542–43 (9th Cir.1987). Significantly, an individual may not, in an effort to effectuate her own interests, take away the enforcement authority of the EEOC even if she wishes to withdraw her charge of discrimination.

### 2. Legislative Background

■■■ The legislative history surrounding the creation of this enforcement scheme sheds light on the unique nature of an EEOC action, and illustrates that Congress granted the EEOC exclusive jurisdiction over cases of unlawful employment discrimination to shift much of the responsibility of ensuring compliance with Title VII from private individuals to the EEOC. The Civil Rights Act of 1964 established the EEOC and authorized it merely to investigate charges of employment discrimination, and to pursue informal methods of conciliation in efforts to resolve those charges. *See* Pub.L. No. 88–352, § 706(a), 78 Stat. 259 (now codified at 42 U.S.C. § 2000e–5(a) (1998)). As originally

enacted, the Civil Rights Act provided that the failure of such conciliation efforts would terminate the EEOC's involvement in the case and would enable the charging party to bring a private cause of action in federal court within thirty days after EEOC notification that conciliation had failed. *See* Pub.L. No. 88–352, § 706(e), 78 Stat. 260 (now codified at 42 U.S.C. § 2000e–5(e) (1998)). Thus, where the EEOC could not convince employers to voluntarily comply with Title VII, the Civil Rights Act of 1964, prior to amendment, left the task of eradicating unlawful employment practices largely to the private initiative of the victims.

However, Congress realized in 1972 that "the machinery created by the Civil Rights Act of 1964[was] not adequate," for the "voluntary approach . . . failed to eliminate employment discrimination." H. Rep. No. 92–238, at 3 (1971), *reprinted in* 1972 U.S.C.C.A.N. 2137, 2139. It seemed clear that the "failure to grant the EEOC meaningful enforcement powers [had] proven to be a major flaw in the operation of Title VII." S.Rep. No. 92–415, at 4 (1971). Moreover, Congress concluded that it was essential that "effective enforcement procedures be provided the Equal Employment Opportunity Commission to strengthen its efforts to reduce discrimination in employment." H. Rep. No. 92–238, at 3, *reprinted in* 1972 U.S.C.C.A.N. 2137, 2139. Indeed, Congress expressed its concern that "in the most profound cases," employers had "more often than not shrugged off the [EEOC's] entreaties and relied upon the unlikelihood of the parties suing them." H. Rep. No. 92–238, at 8, *reprinted in* 1972 U.S.C.C.A.N. 2137, 2144.

Congress resolved to remedy the failure of the Civil Rights Act of 1964 to include effective enforcement powers by amending Title VII. *See* Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, 86 Stat. 103. Significantly, members of Congress debating the amendments agreed that the EEOC needed additional enforcement powers. Rather, they differed on

"what procedures [would] insure the most effective enforcement of the substantive provisions of Title VII." H. Rep. No. 92–238, at 31, *reprinted in* 1972 U.S.C.C.A.N. 2137, 2168. While the majority favored granting the EEOC "cease-and-desist" authority, the minority preferred to permit the EEOC to file actions in federal court after the failure of conciliation instead of requiring the EEOC to conduct its own hearings. *See id.* Ultimately, the minority view prevailed in both houses, and Congress authorized the EEOC to bring suit in federal court, after conciliation efforts have failed, to enforce Title VII against private employers. *See* Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, § 4, 86 Stat. 103, 105.

Congress intended to retain a cause of action for the aggrieved individual while conferring a right of action upon the EEOC. Moreover, Congress wished to avoid duplicitous proceedings. Specifically, the House noted that:

The committee was concerned about the interrelationship between the newly created cease and desist enforcement powers of the Commission and the existing right of private action. It concluded that duplication of proceedings should be avoided. The bill, therefore, contains a provision for termination of Commission jurisdiction once a private action has been filed. . . . It contains as well a provision for termination of the right of private action once the Commission issues a complaint or enters into a conciliation or settlement agreement which is satisfactory to the Commission and to the person aggrieved.

H. Rep. No. 92–238, at 11, *reprinted in* 1972 U.S.C.C.A.N. 2137, 2148. Accordingly, Congress ultimately created an "alternative enforcement procedure" allowing employees to pursue private actions once the 180–day period of exclusive EEOC jurisdiction terminates. *See Occidental,* 432 U.S. at 361. Still, the provision allowing a private cause of action did not change the intent of Congress "that the EEOC, not

private parties 'would have complete authority to decide which cases to bring to Federal district court.'" *EEOC v. Kimberly–Clark Corp.*, 511 F.2d 1352, 1361 & n. 12 (6th Cir.1975) (quoting 118 Cong. Rec. 698 (Jan. 21, 1973) (Senator Domenick)).

### 3. Attempts to Limit EEOC Authority

On the basis of both the clear language and legislative background of Title VII, the Court has rejected attempts to characterize the EEOC as an ordinary plaintiff, or to bind the EEOC to the procedural requirements that private litigants under Title VII face. In *Occidental Life,* the Court observed that the EEOC alone possesses the discretion as to how and when it shall carry out its administrative duties and thus "does not function simply as a vehicle for conducting litigation on behalf of private parties." 432 U.S. at 368. Thus, the Court held that even where the EEOC seeks monetary and injunctive relief on behalf of a single aggrieved individual, state statutes of limitations cannot bind the EEOC. *See id.* at 368–73. Significantly, the Court thereby rejected the notion that "[i]nsofar as the EEOC seeks to recover backpay for individuals, it stands in the shoes of the individuals" and is "not suing in its sovereign capacity." *See id.* at 381 (Rehnquist, J., dissenting).

The Court again addressed a proposed limitation on the EEOC's ability to maintain an action on behalf of aggrieved individuals in *General Telephone. See* 446 U.S. at 318. In that case, the Court recognized that by its 1972 amendments to Title VII, "Congress sought to implement the public interest as well as to bring about more effective enforcement of private rights." *Id.* at 326. The Court further observed that congressional authorization of both a private cause of action and an EEOC cause of action suggests "that the

EEOC is not merely a proxy for the victims of discrimination" and that "[w]hen the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." *Id.* Accordingly, the Court rejected the claim that Rule 23 of the Federal Rules of Civil Procedure binds the EEOC when it seeks classwide relief as it would bind a private Title VII class action litigant.[5] *See id.* at 322. In particular, the Court noted the fact that the EEOC may not be an adequate representative of aggrieved employees because the EEOC's obligation to secure the public interest may well conflict with individual interests. *See id.* at 331.

Similarly, numerous lower courts have acknowledged the independent authority and responsibility of the EEOC to bring suit against an employer whom the EEOC has reasonable cause to believe has engaged in unlawful employment discrimination. We ourselves have recognized that "the EEOC represents the public interest when it sues to enforce Title VII, not solely the interests of the private charging parties." *Kimberly–Clark Corp.*, 511 F.2d at 1359. While the EEOC acts, in some respects, as the representative of an aggrieved individual when it sues on that individual's behalf, the EEOC never ceases to represent the public interest as well. Indeed, whenever the EEOC sues in its own name, it sues both for the benefit of specific individuals and the public interest. *See EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 968 (7th Cir.1996). The EEOC may thereby, "in the public interest, provide relief which goes beyond the limited interests of the charging parties." *Blue Bell Boots, Inc. v. EEOC,* 418 F.2d 355, 358 (6th Cir.1969).

Therefore, the plain language of Title VII, the legislative history and pur-

---

**5.** Under Rule 23, one or more members of a class may sue only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims and defenses of the class representative are typical of those of the class; and (4) the representative parties will adequately protect the interests of the class. *See* Fed.R.Civ.P. 23(a).

pose of the 1972 amendments, and the interpretation of the statute by courts illustrate that Congress granted to the EEOC the right to represent an interest broader than that of a particular individual when it exercises its authority to sue. To empower a private individual to take away this congressional mandate, by entering into arbitration agreements or other contractual arrangements, would grant that individual the ability to govern whether and when the EEOC may protect the public interest and further our national initiative against employment discrimination, and to thereby undo the work of Congress in its 1972 amendments. Accordingly, we conclude the district court erred in dismissing the EEOC's claim for monetary relief on behalf of Adams by relying on principles of preclusion and waiver, and on the FAA. Moreover, we conclude that the district court erred in dismissing the EEOC's claim for general injunctive relief against further racial discrimination at Frank's by impermissibly holding the EEOC to procedural requirements that restrain only private Title VII litigants.

## B. EEOC ACTION FOR MONETARY RELIEF

The district court in this case treated Adams' contractual waiver of her private right to a judicial forum for her claim of discrimination as a waiver by the EEOC of its public right to sue under Title VII. Without legal citation, the district court stated:

> To the extent that the EEOC is suing for substantive relief (back pay, reinstatement, etc.) on behalf of a specific individual who has been allegedly discriminated against, they must take their plaintiff as they find them.

*EEOC v. Frank's Nursery & Crafts, Inc.,* 966 F.Supp. 500, 505 (E.D.Mich.1997). In reaching this result, the district court attempted to rely on general principles of arbitrability, preclusion, and waiver. As its pronouncement finds no support in principles of law or of equity, however, we must reverse the district court's decision to override the broad powers of the EEOC to obtain monetary remedies for violations of Title VII.

### 1. Inapplicability of FAA

We begin with the district court's application of the FAA in this case. The district court ordered Adams to arbitrate in accordance with her agreement and dismissed the EEOC's complaint on the grounds that "the only viable claim in this case—Adams' individual claim seeking damages due to alleged racial discrimination—must be arbitrated" and that staying the action would therefore serve no purpose. *Frank's Nursery,* 966 F.Supp. at 506. Thus, while Frank's argues that "even nonsignatories to arbitration agreements can be compelled to arbitrate," the point is inapposite since the district court did not order the EEOC to arbitrate. It ordered Adams, a party to the agreement but not to the lawsuit, to arbitrate. In doing so, the district court compelled to arbitration an individual who did not wish to pursue any kind of an action in the first place, for Adams neither initiated a grievance nor sought to intervene in the EEOC action once filed. We reject the lower court's application of the FAA.

The FAA grants federal courts the authority to order into arbitration one who has failed, neglected, or refused to arbitrate despite having agreed in writing to do so. *See* 9 U.S.C. § 4 (1996). The "preeminent concern" of Congress in passing the FAA was to require courts to enforce private agreements to arbitrate. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Since the FAA, "as a whole, is at bottom a policy guaranteeing the enforcement of private contractual arrangements," the Court has noted that "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth,* 473 U.S. 614,

625–26, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Under the FAA, then, courts must treat an agreement to arbitrate as a contract that embodies bargained-for exchange where a party consents to the resolution of their substantive claims in an arbitral forum instead of a judicial one. *See id.* at 628. Because courts are to treat agreements to arbitrate as all other contracts, they must apply general principles of contract interpretation to the interpretation of an agreement covered by the FAA. *See Volt Info. Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 475, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

 Under general principles of contract law, it is axiomatic that courts cannot bind a non-party to a contract, because that party never agreed to the terms set forth therein. Accordingly, one individual cannot contractually waive the statutory rights of one who is not a party to the contract, and one individual cannot, by waiving her statutory right to vindicate her own interest, waive the statutory right of a federal sovereign to vindicate the public interest unless the government agrees to such waiver. Therefore, while the Court has held that an individual may contract for an arbitral resolution of her statutory claims, an individual surely cannot contract away the arbitral resolution of another's statutory claims.[6]

Here, Adams contracted with Frank's to resolve her own Title VII claims by arbitration. On the other hand, the EEOC, even after making efforts at conciliation and settlement, never agreed to arbitrate with Frank's. Instead, the EEOC exer-

cised its right to sue Frank's in federal court. As for Adams, she has not raised a claim against Frank's at all: she neither initiated an arbitration nor a federal lawsuit.[7] While the district court ordered Adams to arbitration pursuant to § 4 of the FAA, Adams has never really failed, neglected or refused to arbitrate and has thus not breached her agreement with Frank's.

In an effort to circumvent the obvious fact that the EEOC never agreed to the arbitration of its dispute with Frank's, the district court relied on *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 20, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), to bind the EEOC under Adams' agreement to arbitrate. Indeed, the Supreme Court did state in *Moses H. Cone* that under the FAA, "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Id.* However, a careful reading of *Moses H. Cone* reveals that the district court's reliance on the quoted language was misplaced.

In the case cited, Moses H. Cone Memorial Hospital had substantive related disputes with Mercury Construction Company, with which it had agreed contractually to arbitrate disputes, and an architect with whom it had no arbitration agreement. *See Moses H. Cone,* 460 U.S. at 20, 103 S.Ct. 927. The hospital sought a declaratory judgment against Mercury establishing that Mercury had no right to arbitration. *See id.* at 7, 103 S.Ct. 927. In resolving the case, the Court recognized

6. While courts will occasionally enforce a contract against a stranger to that contract where privity of contract existed between the nonparty and one who was a party to the contract, privity of contract does not exist between Adams and the EEOC. In any event, we again observe that the district court did not enforce the contract so as to require the EEOC to arbitrate. Rather, it ordered Adams to arbitrate.

7. Significantly, it is unlikely that Adams could obtain relief through arbitration even if she so

desired. In her application, Adams agreed "not to commence any claim more than six months after the termination of [her] employment" and to "waive any statues [sic] of limitation to the contrary." (J.A. at 28.) As there is no indication that Frank's has waived any defenses in arbitration and as the district court did not require Frank's to agree to any waiver of defenses, it seems probable that Frank's would argue to the arbitrator that Adams' claim was time-barred if Adams were to comply with the district court's order.

merely that the hospital's related dispute with its architect could not prevent enforcement of its valid arbitration agreement with its construction company. *See id.* at 20, 103 S.Ct. 927.

More significantly, however, the Court recognized that if "the dispute between Mercury and the Hospital is arbitrable under the Act, then the Hospital's two disputes will be resolved separately—one in arbitration, and the other (if at all) in state-court litigation." *Id.* The Court did not require the hospital to arbitrate its dispute with the architect in the absence of an agreement to arbitrate between the two, even where the two disputes were closely related factually. *See id.* Therefore, *Moses H. Cone* could not possibly support the district court's order forcing into arbitration a dispute—between the EEOC and Frank's—that was not the subject of an agreement to arbitrate. That another, hypothetical dispute—between Adams and Frank's—involving the same facts did fall under an agreement to arbitrate could not justify the conclusion of the district court in this case.

■ Setting aside the point that the EEOC never agreed to arbitrate and is not bound by Adams' agreement to arbitrate, allowing the EEOC to seek monetary relief on behalf of an individual who has signed an arbitration agreement would not, contrary to the implicit assumption of the district court, undermine the FAA and the Court's decision in *Gilmer*. The "centerpiece provision" of the FAA makes a "written agreement to arbitrate 'in any maritime transaction or a contract evidencing a transaction involving commerce . . . valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Mitsubishi Motors,* 473 U.S. at 625 (quoting 9 U.S.C. § 2 (1998)). Under the FAA, not all disputes implicating statutory rights should go to arbitration; indeed, "it is the congressional intention expressed in some other statute on which the courts must rely to identify any category of

claims as to which agreements to arbitrate will be held unenforceable." *Id.* at 627–28. As we have discussed, Congress crafted Title VII so that the EEOC would possess an independent right to sue in federal court to vindicate the public interest against employment discrimination. To allow Adams and Frank's to take that right away would completely undo Congress' effort. In essence, our interest in protecting, as a matter of public policy, the EEOC's power to guide the course of every Title VII action outweighs the interest in enforcing Adams' private promise to arbitrate against the EEOC. *See Town of Newton v. Rumery,* 480 U.S. 386, 392, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987).

Moreover, we see no inconsistency between *Gilmer* and permitting the EEOC to recover monetary relief on behalf of an individual. While *Gilmer* stated that "arbitration agreements will not preclude the EEOC from bringing actions seeking class-wide or equitable relief," *see* 500 U.S. at 32, we do not read the Court's language as excluding other kinds of relief. Indeed, the Court made that statement specifically in response to the suggestion that arbitration procedures were inadequate, in that they did not allow for class actions and the pursuit of equitable relief. *See id.* Given that context, *Gilmer* cannot stand for the proposition that where an arbitration agreement exists, the EEOC is automatically limited to actions for equitable relief.

We observe that the EEOC raised the concern in *Gilmer* that employees such as Adams may, by signing arbitration agreements, jeopardize the EEOC's role in fighting employment discrimination. *See Gilmer,* 500 U.S. at 28. In response, the Court noted that "even though the claimant is not able to institute a private judicial action," she would "still be free to file a charge with the EEOC." *Id.* Indeed, the regulations implementing Title VII explain that the EEOC may receive information concerning alleged Title VII violations from any individual. *See* 29 C.F.R. § 1601.6 (1998). Given the enforcement

scheme we have described, the filing of a charge automatically gives rise not only to the exclusive jurisdiction of the EEOC for a period of 180 days, but also to the power of the EEOC to bring its own lawsuit upon finding "reasonable cause" to believe the charge is true.

Presumably, under *Gilmer,* if an individual subject to an arbitration agreement filed a charge with the EEOC and ultimately received a "right to sue" letter, that individual would have a private cause of action that she waived by her prospective agreement to arbitrate. However, if an individual subject to an arbitration agreement filed a charge with the EEOC and put the EEOC on notice of employment practices violative of Title VII, and the EEOC in turn exercised its right to sue, that individual would no longer possess a private cause of action subject to her prior agreement to arbitrate. Rather, the EEOC would have a cause of action on behalf of that individual and the public interest that would fall outside the arbitration agreement.

As Title VII makes clear, the EEOC and aggrieved individuals seek to vindicate distinct though overlapping interests. Congress vested the EEOC with the responsibility of protecting not only the rights of certain aggrieved individuals, but also the public interest generally. The EEOC therefore pursues an interest broader than the one a private Title VII litigant pursues. Indeed, while Title VII provides that the lawsuit of one will preclude the lawsuit of another, the statute charges the EEOC with determining, within 180 days of receiving a charge, whether it should sue to further its broad interests or it should permit an aggrieved individual to sue in order to further her own interests. To the extent there exists a difference between the two types of actions, we believe courts may not treat the agreement of a private party to arbitrate her action as the agreement of the EEOC to arbitrate its action. While we express no opinion on the ability of the EEOC to

agree to arbitrate its disputes with private employers, we conclude, based on the provisions in Title VII creating public and private rights of action and the legislative history of the 1972 amendments, that the EEOC's cause of action in this case falls into a category of claims as to which courts should hold private agreements to arbitrate unenforceable.

**2. Inapplicability of Preclusion Principles**

As the district court could not, under the FAA, order into arbitration a dispute between two parties that never agreed to arbitrate, we must now consider the other potential grounds for its dismissal of the EEOC's complaint. Through its citation of *EEOC v. Harris Chernin, Inc.,* 10 F.3d 1286 (7th Cir.1993), the district court apparently acted to give preclusive effect to the contract between Adams and Frank's so as to prevent the EEOC from bringing its claim on grounds otherwise covered by that contract. In *Harris Chernin,* the Seventh Circuit followed the Third Circuit in holding that " 'if a person first litigates in his own behalf, that person may be precluded from claiming any of the benefits of a judgment in a subsequent action that is brought or defended by a party representing him.' " *Id.* at 1291 (quoting *EEOC v. U.S. Steel Corp.,* 921 F.2d 489, 493 (3d Cir.1990)). We believe the "representative claim preclusion" cited in those cases does not apply to this kind of case. We instead find that principles of preclusion cannot bar the EEOC from suing to "make whole" an individual who has agreed to arbitrate her own claim of discrimination, where that individual has neither initiated nor participated in an arbitration proceeding in the first place.

Under federal res judicata, or claim preclusion, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *See Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). The doctrine precludes litiga-

tion of claims that "were previously available to the parties, regardless of whether they were asserted or determined in the first proceeding." *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). Because res judicata ensures the finality of decisions, *see id.,* it is essential that, at a minimum, the party or privy bound by the doctrine enjoy a "full and fair opportunity" to participate in some adjudication or resolution of the claim in question. *Montana,* 440 U.S. at 153. Prior proceedings may bind a nonparty as a privy where the relationship between the nonparty and a party is such as to legally entitle the latter to stand in judgment for the former, or where the nonparty's interests were adequately represented by a party with the same interests. *See Hansberry v. Lee,* 311 U.S. 32, 41–43, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

As we view this case, preclusion cannot apply because the EEOC and Adams are not in privity, and because they do not possess identical causes of action or interests. *See Kimberly–Clark Corp.,* 511 F.2d at 1359. While it is clear that the EEOC did not have a legal relationship with Adams entitling Adams to sign an arbitration agreement on its behalf, the EEOC's interest in suing on Adams' behalf extends beyond protecting Adams' interest to the interest of the public in general. As the Supreme Court has observed:

> the EEOC is authorized to proceed in a unified action and to obtain the most satisfactory overall relief even though competing interests are involved and particular groups may appear to be disadvantaged.... The EEOC exists to

advance the public interest in preventing and remedying employment discrimination, and it does so in part by making the hard choices where conflicts of interest exist.

*General Telephone,* 446 U.S. at 331. Adams could not adequately represent the EEOC's broad interest when she waived her own right to sue, just as she could not represent the same interests that the EEOC seeks to further by bringing a private Title VII suit. Given a statutory framework and history that vests in the EEOC and not private individuals the power and responsibility to represent not only individual but also public interests whenever it sues in its own name, we cannot conclude that the EEOC and Adams, without more, are privies.

■ Moreover, there is no question that the present case does not involve a prior suit or even a prior arbitration that raised or resolved the issues raised in the EEOC's complaint.[8] Therefore, claim preclusion cannot apply to the EEOC in this case as it has where the aggrieved individual filed suit in federal court on his own before the EEOC commenced its litigation. *See, e.g., Harris Chernin,* 10 F.3d at 1289 (precluding EEOC suit where employee filed suit on the same claim prior to the EEOC and lost on summary judgment); *U.S. Steel Co.,* 921 F.2d at 492 (precluding EEOC suit where private suits by aggrieved individuals on the same claim lost on the merits);*EEOC v. Huttig Sash & Door Co.,* 511 F.2d 453, 456 (5th Cir.1975) (speculating res judicata would bar EEOC suit where employee "had had his suit adjudicated").

---

**8.** Considerable doubt exists as to whether, under federal law, arbitration proceedings can ever have a preclusive effect on the litigation of claims not subject to arbitration. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 222, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The doctrine of claim preclusion applies in federal courts to federal claims under the Full Faith and Credit provision of 28 U.S.C. § 1738 (1994), which requires district courts to give the same preclusive effect to a state's judicial proceedings as would the

courts of the state rendering the judgment. *See McDonald v. West Branch,* 466 U.S. 284, 287, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984). Since arbitration is not a judicial proceeding, and since the Court has declined to fashion a "federal common law of preclusion," arbitration proceedings may not necessarily have a preclusive effect on subsequent federal court proceedings. *Byrd,* 470 U.S. at 223. Claim preclusion might not apply to the present suit even if Adams had fully arbitrated her claims.

.As res judicata could not properly provide a basis for the district court's preclusion of the EEOC's claim for relief on behalf of Adams, we turn to the possible application of judicial estoppel by the doctrine of election of remedies to preclude the EEOC in this case. Under the doctrine of election of remedies, an individual "having two coexistent but inconsistent remedies chooses to exercise one, in which event he loses the right to thereafter exercise the other." Black's Law Dictionary 518 (6th ed.1990). As the Court has explained it, the doctrine "refers to situations where an individual pursues remedies that are legally or factually inconsistent." *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 49–50, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).[9] Significantly, courts have long recognized not only the demise of this doctrine, but also its inapplicability to actions brought under Title VII. *See Newman v. Avco Corp.*, 451 F.2d 743, 746–47 & n. 1 (6th Cir.1971).

Regardless, we observe that Adams neither filed suit against Frank's nor pursued an arbitral remedy against Frank's that led to a substantive resolution of her claim of discrimination. While Adams certainly possessed the power to arbitrate her claims at any time by initiating the arbitral process with Frank's, she did not elect that remedy. By signing her arbitration agreement, Adams merely traded a judicial forum for an arbitral one—she did not "pursue" an arbitral remedy just by signing an agreement to arbitrate in the event that she suffered a violation of her statutory rights. *Cf. Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614,

628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum."). Adams therefore stands in the same shoes as an individual who possesses the "right to sue" but never files a complaint. Since election of remedies could not preclude such an individual, we cannot say that Adams elected an arbitral remedy in this case.

Nor can we say that Adams elected the remedy pursued by the EEOC. As the statutory framework illustrates, when the EEOC decides to retain exclusive jurisdiction by exercising its statutory right to sue under Title VII, it implements Congress' purpose by taking the power to protect the public from unlawful employment discrimination out of the hands of the private individual aggrieved by such discrimination. Congress created such a scheme on the basis of its determination that placing the impetus on individuals to enforce Title VII was not sufficient, partly because private employers successfully relied on the failure of aggrieved employees to sue. *See* H. Rep. No. 92–238, at 8, *reprinted in* 1972 U.S.C.C.A.N. 2137, 2144. Indeed, even if Adams had not signed an agreement to arbitrate, she would not have been free to choose a judicial remedy for herself once the EEOC filed its suit on her behalf.

Of the numerous grounds for preclusion that we have discussed, none apply to this case. While Adams could not be an adequate representative of the EEOC, she

---

**9.** In its own consideration of the election of remedies doctrine, the Court has observed that the "distinctly separate nature of ... contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence." *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 49–50, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). In *Gardner–Denver*, the Court held that courts could not preclude an employee who arbitrated his discrimination grievance pursuant to a collective bargaining agreement from subsequently bringing suit under Title VII, as such an em-

ployee could not prospectively waive Title VII rights. *See Gardner–Denver*, 415 U.S. at 51. In *Gilmer*, however, the Court limited the holding in *Gardner–Denver* to collective bargaining agreement arbitration in pronouncing such prospective waivers enforceable under the FAA. *See Gilmer*, 500 U.S. at 35. While the Court recently acknowledged the tension between these two lines of cases, it did not resolve that tension. *See Wright v. Universal Maritime Serv. Corp.*, —— U.S. ——, ——, 119 S.Ct. 391, 395, 142 L.Ed.2d 361 (1998).

never adjudicated or arbitrated her claim of discrimination in any event. And, while she did not elect the remedy of arbitration in that she did not initiate an arbitration proceeding, she also did not elect the judicial remedy initiated by the EEOC in this case. Under these circumstances, we conclude that principles of preclusion by the doctrines of res judicata and election of remedies cannot justify the district court's dismissal of the EEOC's action for monetary relief.

### 3. Inapplicability of Waiver Principles

As traditional res judicata and estoppel by election of remedies cannot govern this case, we turn to the district court's implicit reliance, in dismissing the EEOC's claim for relief to make Adams whole, on cases precluding EEOC actions brought on behalf of individuals who have settled their claims or who have waived their own rights to sue under Title VII. *See, e.g., EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1543 (9th Cir.1987). Indeed, the Second Circuit recently held that where an "individual has freely agreed to arbitrate [his] ADEA claim, that decision, like the decision to waive or settle a claim, prevents the EEOC from pursuing monetary remedies on behalf of the individual in the federal forum." *EEOC v. Kidder, Peabody & Co.*, 156 F.3d 298, 302 (2d Cir. 1998). Because we believe that an employee cannot preclude an EEOC suit by waiving her own right to sue under Title VII, we must part company with the Second Circuit to the extent it would bar the EEOC from suing for both monetary and injunctive relief on behalf of such an employee.

In *Kidder Peabody*, the Second Circuit followed those courts that recognize the EEOC's right of action as distinct from that of the aggrieved employee but that hold, on the basis of res judicata, "that the EEOC may not seek monetary relief in the name of an employee who has waived, settled, or previously litigated the claim." *Id.* at 301 & n. 3. In accordance with this conclusion, the Second Circuit, like the district court, determined that while the EEOC was still free to pursue injunctive relief on behalf of an aggrieved individual whose Title VII claim is subject to arbitration, the EEOC could not pursue monetary relief on behalf of such an individual.

Aside from placing emphasis on the res judicata decisions in *U.S. Steel* and *Harris Chernin* that cannot apply to this case, the Second Circuit relied heavily on the Ninth Circuit's decision in *Goodyear*. In that case, the Ninth Circuit expressly rejected Goodyear's argument that the interests of the EEOC and the aggrieved individual were identical, and affirmed the right of the EEOC to seek injunctive relief through its action on behalf of that individual.[10] *See Goodyear*, 813 F.2d at 1542–43. Significantly, the Ninth Circuit did not hold, as a general principle, that the EEOC could not seek monetary relief on behalf of an aggrieved individual who had agreed to settle her discrimination claims. Rather, the court concluded that because the individual in the case before it had received satisfaction of her interests by her private settlement, the EEOC's claim was moot. *See id.* at 1542. The court further dismissed as moot the EEOC's claim for backpay on that individual's behalf because she "freely contracted away her right to back pay" through her settlement agreement with Goodyear. *Id.* at 1543.

It is obvious that the present case stands on separate footing. Here, Adams neither received satisfaction of her interests through settlement, nor agreed to give up her right to back pay. While the Second Circuit likened an individual's decision to submit her claim to an arbitral

---

**10.** Indeed, *Goodyear* took note of courts holding that res judicata does not bar government actions to enforce ERISA on the basis of private ERISA litigation. *See Goodyear*, 813 F.2d at 1543 (citing *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 694 (7th Cir. 1986) (en banc)).

forum to the decision by an individual to settle or waive her claim, we must disagree. Indeed, the Second Circuit and the district court below premised their conclusions on the possibility that individuals who have "freely agreed to arbitrate all employment claims" could "make an end run around the arbitration agreement by having the EEOC pursue back pay or liquidated damages on his or her behalf...." *Kidder Peabody*, 156 F.3d at 303. As we have explained, while Title VII affords recovery through private action or an action by the EEOC, it does not allow both, and the power to decide which route to follow rests in the hands of the EEOC, not the aggrieved employee. Since the statute does not grant an individual the power to obtain recovery without authorization from the EEOC, such an individual cannot, by making decisions about her own ability to sue for herself, override the power of the EEOC to sue in its own name.

Accordingly, we see no reason why the EEOC could not seek monetary remedies in its lawsuit on behalf of an individual who could otherwise have pursued an arbitral remedy, just as it always has when suing on behalf of an individual. *See, e.g., EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836, 842 (6th Cir.1994). As Title VII clearly states, when the EEOC decides to sue and a federal court agrees with the EEOC that the defendant-employer has unlawfully discriminated against a particular individual, the EEOC may obtain both injunctive relief and substantive relief including the "reinstatement or hiring of employees, with or without back pay." 42 U.S.C. § 2000e–5(g)(1) (1998). The EEOC may also recover compensatory damages beyond back pay and punitive damages in cases of intentional employment discrimination that violates Title VII. *See* 42 U.S.C. § 1981a (a)(1) (1998). Thus, while "of course, Title VII defendants do not welcome the prospect of backpay" and other monetary relief, "the law provides for such liability and the EEOC's authority to

sue for it."*General Telephone*, 446 U.S. at 324.

Moreover, limiting the EEOC to the pursuit of injunctive and not monetary relief on behalf of aggrieved individuals would severely impede its ability to protect the public interest against unlawful employment discrimination, and would effectively eradicate the efforts of Congress to provide meaningful enforcement powers to the EEOC. As the Court has stated:

> If employers faced only the prospect of an injunctive order, they would have little incentive to shun practices of dubious legality. It is the reasonably certain prospect of a backpay award that "provides the spur or catalyst which causes employers and unions to self-examine and to self-evaluate their employment practices and to endeavor to eliminate, so far as possible, the last vestiges of an unfortunate and ignominious page in this country's history."

*Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Congress affirmed this notion when it added the remedies of compensatory and punitive damages by enacting the Civil Rights Act of 1991. *See* Civil Rights Act of 1991, § 2, Pub.L. No. 102–166, 105 Stat. 1071 (1991) (codified at 42 U.S.C. § 1981a (1998)) (finding that "additional remedies under Federal law are needed to deter unlawful harassment and intentional discrimination in the workplace"). If Congress believed the EEOC could effectively eradicate employment discrimination through injunctive remedies alone, it would not have empowered the EEOC to obtain more.

 Federal courts are equipped well to account for situations where an aggrieved individual has already received satisfaction of her interests through settlement or through arbitration. *See, e.g., EEOC v. Yenkin–Majestic Paint Corp.*, 112 F.3d 831, 836 (6th Cir.1997) (observing that district courts can exercise broad authority when fashioning appropriate relief under Title VII). Indeed, Title VII

charges district courts with the responsibility of determining whether a particular award "will aid in ending illegal discrimination and rectifying the harm it causes." *Shore v. Federal Express Corp.*, 777 F.2d 1155, 1159 (6th Cir.1985). Courts retain equitable power to "locate a just result" when deciding on the kind and amount of relief to award under Title VII.*Occidental Life*, 432 U.S. at 373. In keeping with this principle, we have recognized that an individual's receipt of an arbitration award or settlement funds may limit the amount of relief that the EEOC may recover on her behalf. *See Kimberly–Clark*, 511 F.2d at 1361.

■ Where Congress granted the EEOC the broad power to choose which Title VII actions to litigate in order to eliminate unlawful employment discrimination, we cannot sustain the district court's attempt to use FAA, preclusion or waiver principles to treat an EEOC right of action as identical to Adams' private right of action. Were we to endorse the district court's construction of the EEOC's cause of action and of Adams' arbitration agreement, we would permit employees nationwide to contract away the right of the EEOC to enforce Title VII by bringing actions in federal court. Given the unequivocal intent of Congress that the EEOC possess an independent authority to vindicate the public interest by suing in its own name, we decline to reach such an untenable result by affirming the district court's enforcement of Adams' agreement to arbitrate against the EEOC.

## C. EEOC'S AUTHORITY TO SEEK EQUITABLE RELIEF

■ Aside from dismissing the EEOC's claim to monetary relief, the district court proceeded to dismiss that portion of the EEOC complaint seeking equitable relief, as well, stating:

The EEOC's lawsuit may not proceed for injunctive relief on behalf of a class of individuals allegedly discriminated against because of race simply because

the EEOC, in this instance, has neither identified, nor pled in their complaint, any facts or allegations that a class of individuals were discriminated against on the basis of their race The EEOC has pled only that Adams was discriminated against on account of her race.

*Id.* Because the district court impermissibly required the EEOC to plead a class action in the same manner that an ordinary litigant must, we disagree.

■ As the district court itself recognized, the EEOC may obtain an injunction against further violations of Title VII, on behalf of a class of individuals, if it can prove unlawful discrimination. *See Frank's Nursery*, 966 F.Supp. at 505. An individual litigant seeking relief for a class under Title VII must demonstrate numerosity, commonality and typicality of class member claims. *See General Tel.*, 446 U.S. at 330. However, it is well settled that the EEOC need not comply with the procedural requirements of Rule 23 in seeking classwide injunctive relief. *See id.* Thus, to the extent that the district court dismissed the EEOC's attempt to enjoin Frank's from engaging in discriminatory practices on the basis of race and to obtain an order requiring Frank's to provide equal employment opportunities for African Americans, it erroneously required the EEOC to demonstrate the existence of a class before it could seek relief extending to a class of individuals.

■ As noted above, Title VII provides that the EEOC may recover injunctive relief upon a showing of intentional employment discrimination. *See* 42 U.S.C. § 2000e–5(g)(1). Indeed, upon a finding of any intentional employment discrimination, a district court possesses broad discretion to craft an injunction that will ensure the employer's compliance with the law. *See Wilson Metal Casket*, 24 F.3d at 842 (citing *Lemon v. Kurtzman*, 411 U.S. 192, 201, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973)). Thus, the EEOC may obtain such general injunctive relief, under the equitable dis-

cretion of the district court, even where the EEOC only identifies one or a mere handful of aggrieved employees. *See EEOC v. Monarch Mach. Tool Co.*, 737 F.2d 1444, 1449 (6th Cir.1980); *see also EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1578 (7th Cir.1997); *Harris Chernin*, 10 F.3d at 1292. Indeed, the EEOC may seek injunctive relief to correct discrimination uncovered during its investigation of the charge of just one individual. *See McLean Trucking*, 525 F.2d at 1010 & n. 8. The EEOC may obtain a permanent injunction even where it does not allege a pattern or policy of discrimination. *See, e.g., EEOC v. HBE Corp.*, 135 F.3d 543, 557 (8th Cir.1998); *Ilona of Hungary*, 108 F.3d at 1578.

It is clear that the EEOC may obtain equitable relief that protects a class of persons from unlawful employment discrimination without citing numerous instances of such discrimination. While the right to such relief is not absolute, and the power to order it rests in the hands of the lower courts, the EEOC may seek it upon proof even of just one instance of discrimination that violates Title VII. In seeking such relief, the EEOC need not identify a class or its numbers, or even identify a pattern or practice of discrimination. *See General Tel.*, 446 U.S. at 330. Therefore, the district court erred when it barred the EEOC from seeking general injunctive relief on the grounds that did not sufficiently plead a class of individuals who were victims of discrimination on the basis of race at Frank's.

## IV.

Some have asserted that allowing the EEOC to sue on behalf of an individual like Adams would "permit an individual . . . . to make an end run around the arbitration agreement by having the EEOC" sue on her behalf. *Kidder Peabody*, 156 F.3d at 303. However, individuals cannot control, under Title VII, whether and when the EEOC will sue, since the EEOC possesses "exclusive jurisdiction" over such matters. *See General Tel.*, 446 U.S. at 326. And while the district court suggested that allowing the EEOC to sue for monetary relief on behalf of Adams would "render agreements to arbitrate voidable at the whim of the EEOC," *Frank's Nursery*, 966 F.Supp. at 505, we observe that "EEOC resources to pursue discrimination are limited, and the majority of employees who have signed arbitration agreements will therefore not have the benefit of EEOC involvement." *Kidder Peabody*, 156 F.3d at 304 (Feinberg, J., concurring). Congress granted the EEOC the discretion, upon a finding of reasonable cause, to supplant an individual's legal action by a legal action of its own, for the benefit of the public and the individual on whose behalf the EEOC is proceeding, thereby superseding the individual's right to sue under Title VII. By that same act, Congress conferred upon the EEOC the discretion to take away the right of private actors to resolve through arbitration Title VII matters that implicate the public interest.

Accordingly, we REVERSE the district court's dismissal of the EEOC's suit and reinstate this action to permit the EEOC to pursue monetary and injunctive relief against discrimination on the basis of race at Frank's as alleged in the complaint.

DAVID A. NELSON, Circuit Judge, concurring in part and dissenting in part.

Insofar as the panel holds that the district court erred when it barred the Equal Employment Opportunity Commission from seeking general injunctive relief, I concur. Insofar as the panel holds that the money damages claim asserted on behalf of Carol Adams falls within a category of claims as to which the courts should treat private agreements to arbitrate as unenforceable, I respectfully dissent.

## I

When Frank's Nursery hired Carol Adams (a step the company—if not its

lawyers—has probably come to regret by this time, legal fees being what they are today), the engagement was subject to the understanding that if Ms. Adams wished to file an employment claim at any point, the claim would be resolved not by litigation in a judicial forum but by arbitration in a forum provided by the American Arbitration Association.[1] Although the legality of the arbitration agreement was challenged in the court below under Title VII of the Civil Rights Act of 1964, no such challenge has been raised here. We must therefore accept it as given that the company's insistence on the use of the agreement did not violate Title VII.

Ms. Adams is an African American. About a year and a half after she was hired, a newly-created job at Frank's Nursery—a job in which Ms. Adams was interested—went to a white woman. According to Frank's Nursery, the white woman was better qualified than Ms. Adams was. Ms. Adams disagreed with the company's assessment of her qualifications *vis-à-vis* those of the successful applicant—and, claiming to be the victim of racial discrimination, Ms. Adams filed a complaint with the EEOC.

That agency ultimately sued Frank's Nursery in a federal district court in Detroit. In addition to seeking general equitable relief, the EEOC undertook to act as a sort of bureaucratic next friend of Carol Adams personally. In this role—which the EEOC assumed with a view to vindicating the public interest in preventing unlawful discrimination, as well as with a view to vindicating Ms. Adams' individual rights—the EEOC sought a money judgment of which Ms. Adams would be the sole beneficiary. Without proposing arbitration, the EEOC asked the district court to award Ms. Adams (1) back pay with prejudgment interest, (2) compensatory damages in addition to back pay, and (3) punitive damages.

The governing statute gave Ms. Adams a right to intervene in the lawsuit. See 42 U.S.C. § 2000e–5(f)(1). Had she exercised her right of intervention, Ms. Adams would have been entitled to ask that the claim for damages be submitted to arbitration.[2] Ms. Adams elected not to intervene, evidently preferring to let the EEOC litigate on her behalf in a forum she herself had renounced in favor of arbitration.

On these facts, the district court held that "to the extent that Adams is bound by her agreement to arbitrate, so is the EEOC." *EEOC v. Frank's Nursery & Crafts, Inc.*, 966 F.Supp. 500, 505 (E.D.Mich.1997). "To decide otherwise," the district court observed, "would render agreements to arbitrate voidable at the whim of the EEOC." *Id.*

The only federal appellate court heretofore to have issued a published opinion on a comparable question is the United States Court of Appeals for the Second Circuit. That court came out the same way the district court did in the case at bar. *EEOC v. Kidder, Peabody & Co., Inc.*, 156 F.3d 298 (2d Cir.1998). My colleagues on the panel have concluded that the Second Circuit was simply wrong. Our sister circuit's supposed error is less obvious to me, however, and rather than creating a split of authority, I would be inclined to follow the course charted by the Second Circuit.

## II

The issue in *Kidder Peabody* was "whether an arbitration agreement be-

---

1. I should suppose that if such alternative dispute resolution agreements are generally believed to be viable, use of the agreements would tend to encourage the hiring of marginal job applicants. If this assumption be correct, it seems to me that today's decision may well have a tendency—completely unintended by this court, of course—to place the disadvantaged job seeker at a further disadvantage.

2. I am inclined to doubt that Frank's Nursery could have defeated such a request as untimely if the request had been presented promptly upon the filing of the lawsuit. This issue has not been briefed, however, and I should be reluctant to hazard a firm opinion on the question at this juncture.

tween an employer and employee precludes the EEOC from seeking purely monetary relief for the employee under the [Age Discrimination in Employment Act] in federal court." *Id.* at 300–01. Citing with apparent approval the decision of the district court in the case at bar, and relying heavily on *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)—a case where, in holding that a statutory age discrimination claim could be subjected to compulsory arbitration by prior agreement of the claimant, the Supreme Court cited court of appeals decisions holding, as the Second Circuit explained (156 F.3d at 301), "that an individual's settlement or waiver of a claim under the ADEA preempted a subsequent EEOC action on that claim seeking damages for the individual"—the Second Circuit decided *Kidder Peabody* in favor of the employer and against the EEOC.

Although the Second Circuit recognized that the EEOC's right of action is separate from that of the employee, the court noted other appellate decisions holding that "in seeking individual monetary relief, as opposed to class-wide injunctive relief, the EEOC does not represent the public interest to the same degree." *Kidder Peabody,* 156 F.3d at 301, citing *EEOC v. United States Steel Corp.,* 921 F.2d 489, 496 (3d Cir.1990), and *EEOC v. Goodyear Aerospace Corp.,* 813 F.2d 1539, 1543 (9th Cir. 1987).[3] The statutory enforcement mechanism "gives the EEOC *representative* responsibilities when it seeks private benefits for an individual," and "Congress would not have crafted this enforcement scheme ... unless Congress intended for the EEOC to serve as the individual's *representative* when it seeks to enforce that individual's rights." *Kidder Peabody,* 156 F.3d at 302, quoting *United States Steel Corp.,* 921 F.2d at 495 and 494–95 (emphasis supplied). Where the EEOC acts in a representative capacity in seeking

private benefits for an individual, notwithstanding that the agency also acts in the public interest, the Second Circuit reasoned that the individual's election of an arbitral forum precludes the representative from adjudicating the claim in a different forum.

The *Kidder Peabody* court was strengthened in its conclusion by the fact—a fact repeatedly recognized by the Supreme Court—"that the [Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*] expresses a strong Congressional preference in favor of enforcing arbitration agreements." *Kidder Peabody,* 156 F.3d at 300. See *Gilmer,* 500 U.S. at 25; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "[T]he FAA's 'liberal federal policy favoring arbitration agreements' ... supports the conclusion that where the individual has freely agreed to arbitrate the ADEA claim, that decision, like the decision to waive or settle a claim, prevents the EEOC from pursuing monetary remedies on behalf of the individual in the federal forum." *Kidder Peabody,* 156 F.3d at 302, quoting *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24.

The Second Circuit readily acknowledged that the case before it "presents competing public interests—the interest in allowing the EEOC broad authority to pursue actions to eradicate and prevent employment discrimination and the interest in encouraging parties to arbitrate." *Id.* at 303. This clash of interests probably stems in part, at least, from the fact that the concept of the public good embodied in the Arbitration Act has a rather different philosophical flavor than the concept of the public good embodied in Title VII and the congeries of New Deal legislation that Congress pressed into service as a mechanism for enforcing Title VII.

---

**3.** "[W]here an individual has freely contracted away, waived or unsuccessfully litigated a claim, 'the public interest in a back pay

award is minimal.'" *Kidder Peabody,* 156 F.3d at 302, quoting *Goodyear Aerospace Corp.,* 813 F.2d at 1543.

The Arbitration Act can fairly be characterized as a statute promoting individualism. It manifests an understanding that where participants in economic activity have chosen to adopt dispute resolution procedures that they believe will cut red tape, take less time, and save litigation expense, the public interest will be served by allowing implementation of the choices made by the key players themselves.

Title VII and its 1972 amendments—as the majority opinion demonstrates—is a more collectivistic statute. It is not concerned with economic efficiency, and it showcases the principle that individual choices are subordinate to the overriding interests of the state.

There is nothing particularly remarkable about the tension between the two statutes—such tensions are commonplace, obviously, in the work product of a national legislature answerable to an electorate as large and as varied as ours—and one might hope that Congress itself will ultimately tell us how the somewhat uneasy fit between the Arbitration Act and Title VII ought to be accommodated. In the absence of clear guidance from Congress, however, the courts must do the best they can to square the circle.

Recognizing that anything approaching certitude in such an exercise is impossible, I am bound to say that the answer given by the Second Circuit in *Kidder Peabody* makes sense to me:

"We believe that the result reached by the district court, allowing the EEOC to pursue injunctive relief in the federal forum while encouraging arbitration of the employee's claim for private remedies, strikes the right balance between these interests. Further, to permit an individual, who has freely agreed to arbitrate all employment claims, to make an end run around the arbitration agreement by having the EEOC pursue back pay or liquidated damages on his or her behalf would undermine the *Gilmer* decision and the FAA." 156 F.3d at 303.

Given the representative capacity in which the EEOC prosecutes claims on behalf of individuals, it does not seem to me that the Second Circuit solution would undermine either Title VII or any Supreme Court decision of which I am aware.[4] To the extent that my colleagues on the panel have seen the matter differently, I respectfully dissent. As indicated above, and on the strength of the reasoning contained in Part III C of the majority opinion, I concur in the conclusion that the EEOC is not barred from seeking general injunctive relief.[5]

---

**4.** I am not unmindful of *General Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980), where the EEOC tells us that "the Supreme Court ... confirmed that the Commission does not represent the victims of alleged discrimination in its suits...." (EEOC Reply Br. at 11.) But what the Supreme Court confirmed in *General Telephone*, as I read the Court's opinion, is that when the Commission acts for the benefit of specific individuals, "it acts *also* to vindicate the public interest in preventing employment discrimination." *General Telephone*, 446 U.S. at 326 (footnote omitted) (emphasis supplied). Because of the public interest role played by the agency when it brings suit in its own name, in other words, "the EEOC is not *merely* a proxy for the

victims of discrimination...." *Id.* (emphasis supplied). This is a far cry from saying that the EEOC exercises no representative responsibilities when it seeks private benefits for an individual—and the caselaw, as we have seen, teaches very clearly that "Congress intended for the EEOC to serve as the individual's representative when it seeks to enforce that individual's rights." *Kidder Peabody*, 156 F.3d at 302, quoting *E.E.O.C. v. United States Steel Corp.*, 921 F.2d at 495.

**5.** Such general injunctive relief does not, of course, include blocking the use of arbitration agreements; having failed to appeal the district court's denial of an injunction on that issue, the EEOC is precluded from pursuing it further in this case.