**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION and Pennsylvania Human Relations Commission, Appellees,**

**v.**

**UNITED STATES STEEL CORPORATION, Appellant.**

**No. 90–3041.**

United States Court of Appeals, Third Circuit.

Argued July 31, 1990.

Decided Dec. 14, 1990.

---

Richard J. Antonelli (argued), Buchanan Ingersoll, Professional Corp., Jared H. Meyer, USX Corp., Pittsburgh, Pa., for appellant, U.S. Steel Corp.

Charles A. Shanor, General Counsel, Gwendolyn Young Reams, Associate General Counsel, Lorraine C. Davis, Asst. General Counsel, Estelle D. Franklin (argued), Washington, D.C., for appellee, E.E.O.C.

Before HIGGINBOTHAM, Chief Judge, and SLOVITER and ALITO, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge:

This case presents the question whether the doctrine of res judicata precludes an individual who has unsuccessfully sued an employer for age discrimination from obtaining individual relief in a later suit that is brought by the Equal Employment Opportunity Commission and that asserts the same claim. The district court allowed, 728 F.Supp. 1167, such recovery, citing equitable considerations. We will reverse.

## I.

This case grew out of a waiver requirement imposed in 1982 by the United States Steel Corporation (now USX) for employees seeking a "70/80 mutually satisfactory pension." The 70/80 pension, one of several potentially available to USX employees, is a lucrative early retirement plan that the company grants in its discretion to selected employees under age 62 who meet certain conditions relating to cumulative years of age and continuous service with the company. As implied by its name, the 70/80 mutually satisfactory pension was intended for those employees whose early retirement was desired both by the company and the employees. This pension was often granted to management employees whose jobs were eliminated during reductions in force.

In the late 1970's and early 1980's, some employees who had been granted 70/80 mutually satisfactory pensions filed charges alleging employment discrimination. USX believed that these discrimination claims were inconsistent with the understanding on which the 70/80 pension was based, i.e., that early retirement under this pension was mutually satisfactory to the company and the employee. Therefore, USX's board of directors adopted a new requirement, effective in October 1982, that employees accepting the 70/80 mutually satisfactory pension must sign a release form, known as PF–116–B, broadly waiving their rights under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 et seq., and other antidiscrimination statutes. Under the release, signatories agreed not to file claims or permit anyone else to file claims on their behalf, not to become members of a class pressing claims, not to assist in the prosecution of claims, and to withdraw any claims then pending. The release provided substantial penalties for breach, including the cancellation of the 70/80 mutually satisfactory pension or the conversion of that pension into a less desirable standard variety.

In late 1982, James Coventry and others initiated an ADEA class action against USX in the Western District of Pennsylvania (*Coventry et al. v. United States Steel Corp.*, Civ. Action No. 83–977 (W.D.Pa.)). Under the special procedures for ADEA class actions (*see* 29 U.S.C. §§ 216(b), 626(b)), Robert Ward and James Thayer chose to join as plaintiffs. The complaint in this case originally contained a general allegation of age discrimination with respect to termination, lay-off, and recall. In 1983, an amendment added a specific allegation that USX retaliated against the plaintiffs, in violation of section 4(d) of the ADEA, 29 U.S.C. § 623(d), because they refused to sign the release. Some of the plaintiffs eventually settled with USX and obtained retroactive reinstatement of 70/80 pensions, as well as other relief. Coventry, Thayer, and Ward, went to trial before a jury and lost. They did not appeal.

Robert Mitchell, another USX employee, commenced a separate ADEA suit against USX in 1983 in the Northern District of Alabama. After an arbitrator ruled that Mitchell was not entitled to a 70/80 pension, Mitchell filed his complaint, alleging, among other things, that USX violated the ADEA by coercing and defrauding employees into giving up their rights and benefits, including the right to file charges with the EEOC. The jury returned a verdict in favor of USX, and Mitchell did not appeal this adverse judgment. *Mitchell v. United States Steel Corp.*, No. CV83–P–248–S (N.D.Ala., Oct. 9, 1984). Instead, Mitchell filed a new complaint seeking a 70/80 pension in the same court. In December 1984, the district court dismissed this case with prejudice based on the prior judgment and the arbitrator's decision, (*Mitchell v. Unit-*

*ed States Steel Corp.*, No. CV84–H2574–S (N.D.Ala., Dec. 11, 1984)), and again Mitchell took no appeal.

Meanwhile, in March 1984, the EEOC had filed a complaint in the Western District of Pennsylvania, alleging that USX was engaging in employment practices that violated section 4(d) of the ADEA, 29 U.S.C. § 623(d), by requiring execution of the release as a condition for obtaining a 70/80 mutually satisfactory pension. In April 1984, the district court issued a preliminary injunction relating to the release. In 1987, the district court entered a permanent injunction prohibiting USX from (1) requiring employees to sign the release in order to obtain a 70/80 pension, (2) terminating or reclassifying the 70/80 pension of any employees who filed an ADEA claim with the EEOC or in a court proceeding, and (3) withholding 70/80 benefits from any person whose 70/80 pension was terminated or reclassified pursuant to the release. The court also ordered USX to remit pension benefits withheld as the result of the wrongful termination or reclassification of a 70/80 pension. *Equal Employment Opportunity Commission v. United States Steel Corp.*, 671 F.Supp. 351 (W.D. Pa.1987).

USX subsequently submitted a list of employees who had been denied or had lost 70/80 benefits due to the release. USX argued, however, that some of these employees, who had already settled their ADEA claim, were not entitled to any further retroactive benefits. USX also contended that other former employees, including the *Coventry* plaintiffs and Mitchell,[1] were barred from receiving retroactive reinstatement in the 70/80 plan by the doctrine of res judicata.[2]

---

**1.** USX admitted that Coventry and Ward were denied 70/80 pensions either because they had filed ADEA charges or had advised USX that the filing of such charges was imminent. USX admitted that Thayer's 70/80 pension was converted to another variety because he opted into the *Coventry* case. After initially contending that Mitchell had not been denied a 70/80 pension because of the waiver requirement, USX consented to an order placing him in the same category as Coventry, Ward, and Thayer.

**2.** Under Fed.R.Civ.P. 8(c), the defense of res judicata must be set forth affirmatively in a responsive pleading. Failure to comply with this rule may preclude a party from asserting the defense. *Prinz v. Greate Bay Casino Corp.*, 705 F.2d 692 (3d Cir.1983); *Kern–Oil & Refining Co., v. Tenneco Oil Co.*, 840 F.2d 730 (9th Cir. 1988). Here, however, at the time EEOC filed its complaint, *Coventry v. U.S. Steel*, W.D.Pa. Civil No. 83–0977, the lawsuit involving Coventry, Ward and Thayer, *inter alia*, was still pending. The judgment against Coventry, Ward and

The district court agreed with USX that employees who had settled their claims were not entitled to further retroactive benefits, but the court held, at the EEOC's request, that prejudgment interest should be granted to those employees from July 1983 or the original date on which they applied for a 70/80 pension until the date of the court's order. The district court also held that res judicata did not preclude retroactive relief for those employees who had unsuccessfully litigated their ADEA claims in separate actions. The court stated that it was required to "weigh the harm involved by allowing employees to repeatedly litigate an issue versus the harm involved by allowing [United States Steel] to profit by its discriminatory practices." The court then concluded that it was "persuaded that considerations of equity tip the scales of justice in favor of the employees."

USX appealed. Acknowledging the validity of the permanent injunction, USX contested only the award of prejudgment interest to the employees who had settled their claims and the award of benefits to the *Coventry* plaintiffs and Mitchell. Before this court, the EEOC conceded that the individuals who had settled their claims should not receive prejudgment interest.[3] Accordingly, the only question now before us is whether res judicata bars the award of individual relief for the former employees who previously litigated their ADEA claim and suffered an adverse final judgment.

## II.

■ The doctrine of res judicata "is not a mere matter of technical practice or procedure" but "a rule of fundamental and substantial justice." *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299, 37 S.Ct. 506, 507, 61 L.Ed. 1148 (1917). It is "central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions." *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979). Res judicata avoids "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.*

In this case, the district court held that res judicata does not preclude recovery by the unsuccessful individual litigants because the balance of equities tipped in their favor. The district court's desire to provide full relief for all of the victims of USX's illegal discrimination is certainly understandable, but the district court lacked

Thayer did not become final until after they failed to appeal the jury verdict entered on January 16, 1987. USX subsequently raised the defense of res judicata before the district court in October, 1987 through its motion to modify the judgment. *See Lesher v. Lavrich,* 784 F.2d 193 (6th Cir.1986) (res judicata defense raised for first time on appeal was not waived where, at time district court entered its judgment, only relevant state court decision was decision of juvenile court and appeal was pending); *Cotton States Mutual Insurance Co. v. J.O. Anderson,* 749 F.2d 663 (11th Cir.1984) (collateral estoppel defense was not waived where parties had filed their briefs before the state court judgment was issued). *But see also Evans v. Syracuse City School District,* 704 F.2d 44 (2d Cir.1983) (where school district did not raise res judicata defense until two years and nine months after the defense could properly have been asserted, it was waived.) A final judgment with respect to Mitchell's claims existed as of December 11, 1984 (N.D. Alabama, Civil Action No. 84–H–2574–S). However, EEOC apparently did not identify Mitchell as an aggrieved employee until

after the district court entered its opinion in October, 1987. USX cannot be held to have waived the defense of res judicata with respect to Mitchell when it did not know that Mitchell was one of the employees considered eligible for retroactive reinstatement of a 70/80 pension under the terms of the district court opinion. Moreover, the EEOC has never objected to the res judicata defense on Rule 8(c) grounds. Under these circumstances, Rule 8(c) did not preclude USX from maintaining the res judicata defense. Because the EEOC did not assert that the res judicata defense was procedurally barred, "the issues [were] enlarged." *Prinz,* 705 F.2d at 694, quoting 2A *Moore's Federal Practice,* ¶ 8.27[3] at 8–251, 8–253 (2d ed. 1981).

**3.** Other circuits have held that an individual who settles a discrimination claim may not obtain additional relief in an EEOC action asserting the same claim. *EEOC v. Cosmair, Inc.,* 821 F.2d 1085 (5th Cir.1987); *EEOC v. Goodyear Aerospace Corp.,* 813 F.2d 1539 (9th Cir.1987); *EEOC v. McLean Trucking Co.,* 525 F.2d 1007, (6th Cir.1975).

the authority to put aside the rules of res judicata based on a weighing of the competing equities. "The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply 'no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata.'" *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981) (citation omitted). We turn, therefore, to the established principles of res judicata that must govern the disposition of this appeal.

### III.

■ The doctrine of res judicata "is often analyzed ... to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion'." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, n. 1, 104 S.Ct. 892, n. 1, 79 L.Ed.2d 56 (1984). Claim preclusion, the concept that must be applied in the present case, requires a showing that there has been (1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies. *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 983 (3d Cir.1984). *See also Purter v. Heckler*, 771 F.2d 682, 690 (3d Cir. 1985).

In this case, the Commission does not dispute that the first two elements of claim preclusion are present. Both of the earlier private suits resulted in final judgments on the merits, and both included the same claim as the Commission's suit, i.e., that USX violated section 4 of the ADEA in awarding 70/80 pensions. The Commission contends, however, that the final element of claim preclusion—the same parties or their privies—is lacking. The Commission is, of course, correct that the private suits and the Commission's suit involved different parties. The issue we must consider, therefore, is whether the private plaintiffs and the Commission are in privity.

Privity, as noted by this court many years ago in an opinion authored by Judge Goodrich, "is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the res judicata." *Bruszewski v. United States*, 181 F.2d 419, 423 (3d Cir.), *cert. denied*, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950). One relationship long held to fall within the concept of privity is that between a nonparty and party who acts as the nonparty's representative. *See Martin v. Wilks*, 490 U.S. 755, 109 S.Ct. 2180, 2191 n. 2, 104 L.Ed.2d 835 (1989); *Restatement (Second) of Judgments* § 41 (1980).

■ Litigation involving a representative party may have claim preclusive effects in two ways. If the representative party litigates first, subsequent litigation involving persons on whose behalf the representative appeared may be precluded. *Id.* Conversely, if a person first litigates in his own behalf, that person may be precluded from claiming any of the benefits of a judgment in a subsequent action that is brought or defended by a party representing him. *Chicago, Rock Island & Pacific Railway Co. v. Schendel*, 270 U.S. 611, 618, 46 S.Ct. 420, 423, 70 L.Ed. 757 (1926); *St. Louis Typographical Union No. 8 v. Herald Co.*, 402 F.2d 553, 556 (8th Cir.1968); *United States v. Silliman*, 167 F.2d 607 (3d Cir. 1948); *Restatement (Second) of Judgments* § 42(2) and comment g (1980). With respect to this latter situation, the *Restatement (Second) of Judgments* aptly states: "A person who appears in his own behalf in litigation has had his day in court and is bound by the judgment. Just as he may not himself relitigate the claim thus decided, neither may he do so in a subsequent action prosecuted or defended through a representative." *Restatement (Second) of Judgments*, § 42(2) comment g (1980). In short, the doctrine of claim preclusion applies symmetrically to instances in which litigation by a representative precedes individual litigation and to those instances in which the opposite sequence occurs.

Over the years, claim preclusion has been applied to a variety of representatives. For example, the Supreme Court recognized more than a century ago that the judgment in an action in which a trust-

ee represents the interests of beneficiaries is binding on the beneficiaries. *Richter v. Jerome*, 123 U.S. 233, 246, 8 S.Ct. 106, 111, 31 L.Ed. 132 (1888); *Shaw v. Railroad Co.*, 100 U.S. 605, 611, 25 L.Ed. 757 (1879); *Kerrison v. Stewart*, 93 U.S. 155, 160, 23 L.Ed. 843 (1877). Likewise, the Supreme Court has long held that the judgment in an action brought by an adequate class representative binds the class members. *Hansberry v. Lee*, 311 U.S. 32, 42–43, 61 S.Ct. 115, 118–19, 85 L.Ed. 22 (1940); *Hartford Life Insurance Co. v. IBS*, 237 U.S. 662, 672–73, 35 S.Ct. 692, 695–96, 59 L.Ed. 1165 (1915); *Smith v. Swormsteldt*, 16 How. (57 U.S.) 288, 302–03, 14 L.Ed. 942 (1854). In a similar vein, this court has held that judgments in actions involving a labor union or employee association are binding on members whose interests were adequately represented. *Bolden v. State Police*, 578 F.2d 912, 918–19 (3d Cir.1978) (employee association); *Panza v. Armco Steel Corp.*, 316 F.2d 69 (3d Cir.1963) (labor union).

Well established precedent also holds that the judgment in an action in which a government agency or officer represents private individuals is binding on those individuals. For example, in *Heckman v. United States*, 224 U.S. 413, 445–46, 32 S.Ct. 424, 434–35, 56 L.Ed. 820 (1912), in which the Supreme Court held that the United States could sue on behalf of Indians to set aside illegal land conveyances, the Court explained that the nonparty Indians would be bound by the judgment. The Court wrote: "[I]f the United States, representing the owners of restricted lands, is entitled to bring a suit of this character, it must follow that the decree will bind not only the United States, but the Indians whom it represents in the litigation. This consequence is involved in the representation." *Id.* See also *Greene v. Art Institute of Chicago*, 16 Ill.App.2d 84, 147 N.E.2d 415 (1957); *Restatement (Second) of Judgments*, § 41(d) (1980); 18 C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure*, § 4458 at 512–520 (1981).

While the principle of claim preclusion by virtue of government representation is settled, the task of determining whether a government officer or agency represents or represented private individuals for res judicata purposes in a particular case is often very difficult. "[D]elicate questions may arise as to the interplay between public and private rights." 18 C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure*, § 4458 at 513. In the present case, however, it is clear that the EEOC sought to serve as the representative of the former employees insofar as it attempted to obtain 70/80 pension benefits on their behalf.

The distinctive enforcement scheme of the ADEA shows unmistakenly that the EEOC has representative responsibilities when it initiates litigation to enforce an employee's rights. Although the ADEA expressly authorizes aggrieved individuals to bring civil actions for legal and equitable relief, the Act provides that "the right of any person to bring such actions shall terminate upon the commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee under [the Act]." [4] 29 U.S.C. § 626(c)(1); *see Nicholson v. CPC International, Inc.*, 877 F.2d 221, 225 (3d Cir.1989); *EEOC v. Eastern Airlines*, 736 F.2d 635 (11th Cir.1984); *Burns v. Equitable Life Assurance Society of U.S.*, 696 F.2d 21 (2d Cir.1982), *cert. denied*, 464 U.S. 933, 104 S.Ct. 336, 78 L.Ed.2d 306 (1983). We are convinced that Congress would not have crafted this enforcement scheme—on the one hand, creating an individual cause of action and, on the other, cutting off the

---

**4.** This provision of the ADEA was patterned after section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b). The enforcement scheme of Title VII of the Civil Rights Act of 1964, from which the framers of the ADEA consciously departed (see *Burns v. Equitable Life Assurance Society*, 696 F.2d 21, 24 n. 2 (2d Cir.1982)), has no similar feature.

We do not address the question whether the filing of an EEOC action requires dismissal of a pending private suit or merely bars the subsequent commencement of a private suit. See *EEOC v. Eastern Airlines, supra; Burns v. Equitable Life Assurance Society, supra.*

individual's right to sue once the EEOC begins its action—unless Congress intended for the EEOC to serve as the individual's representative when it seeks to enforce that individual's rights. If Congress did not believe that the individual's claim would be adequately pressed by the EEOC, it would surely have preserved the individual's right to bring suit either during or after the EEOC suit. Thus, the conclusion that the EEOC is the individual's representative in ADEA suits, like the one before us here seems inescapable.

We also view the provision of the ADEA prohibiting private suits once the EEOC files its complaint as essentially a codification of the doctrine of representative claim preclusion with respect to those instances in which the EEOC litigates first: litigation by the representative party (the EEOC) seeking private relief for an individual precludes subsequent litigation of the same claim by an individual for whom the representative sought relief. While the ADEA does not expressly provide that the doctrine of representative claim preclusion should apply symmetrically to those instances in which a private individual litigates first, that conclusion seems implicit in the ADEA's enforcement scheme. The underlying policy of res judicata—that a person who has had his day in court is not entitled to another—surely applies with no less force in those instances in which the individual has actually litigated on his own behalf than in those in which the preclusive litigation seeking private benefits was conducted by a representative. Moreover, as previously noted, the doctrine of representative claim preclusion generally applies equally regardless of the sequence of litigation. Thus we are persuaded that the ADEA's distinctive enforcement scheme gives the EEOC representative responsibilities when it seeks private benefits for an individual and that the doctrine of repre-

sentative claim preclusion must therefore be applied.

The EEOC's representative capacity in the present case is also evident because the employees who unsuccessfully sued USX in the earlier private litigation are now apparently willing to accept the individual relief awarded in the EEOC action. This demonstrates that they view the EEOC as a representative who sought to litigate on their behalf.

Had the EEOC been required, like a private class representative, to maintain its action under Rule 23 of the Federal Rules of Civil Procedure, the individuals victimized by USX's discrimination could not have obtained individualized relief without being embraced by the judgment. In a class action under Rule 23(b)(3) seeking compensatory relief for individual victims, the individuals who previously sued USX would have received notice of the class action and would have been included in the judgment unless they notified the court that they desired to "opt out." Had they failed to request exclusion, they would have been deemed parties for res judicata purposes. *Id.* Had they opted out, they would not have been bound by or entitled to the benefits of the judgment. *See, e.g., Lusardi v. Xerox Corp.*, 855 F.2d 1062 (3d Cir.1988); *Restatement (Second) of Judgments*, § 42, comment d (1980); 18 C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure*, § 4455 at 4738 & n. 8, 483 & n. 39. They could not have remained outside the judgment for res judicata purposes while at the same time seeking and enjoying its benefits.[5]

Although the Supreme Court held in *General Telephone v. EEOC*, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980),[6] that the Commission need not comply with Fed. R.Civ.P. 23 when it brings suit seeking class relief under Title VII (a conclusion

---

5. The same result would have occurred if a USX employee or group of employees had commenced an ADEA class action pursuant to 29 U.S.C. § 216(b) and 626(b). *See Hoffmann–La-Roche Inc. v. Sperling*, —— U.S. ——, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989), *affirming*, 862 F.2d 439 (3d Cir.1988). No member of the class would have been bound by or entitled to the benefits of the judgment in the class action without written consent. 29 U.S.C. § 216(b).

6. *See also Bazemore v. Friday*, 478 U.S. 385, 406 n. 18, 106 S.Ct. 3000, 3012 n. 18, 92 L.Ed.2d 315 (1986) (Brennan, J., concurring).

that we assume, for present purposes, applies equally to an ADEA suit), the Court made clear that this holding was not intended to permit individual claimants to obtain relief that would otherwise be precluded by res judicata. Instructing that trial courts should "prevent undue hardship to the defendant," the Court explained that trial courts could require individuals seeking to share in the EEOC's award to become parties. 446 U.S. at 333, 100 S.Ct. at 1708. If this sound procedure had been followed in the present case, neither the EEOC nor the previously unsuccessful individual litigants could have possibly claimed that those individuals were not parties or privies to the EEOC action. The absence of any formal designation of the individual claimants as parties, however, does not change the nature of the EEOC's role as the individuals' representative and should not change the effect of the doctrine of claim preclusion. By claiming or accepting individual relief won by the EEOC, the individuals would necessarily concede that the EEOC was their representative and that they were embraced by the EEOC's judgment. For those individuals who had previously brought their own suits against USX and lost on the merits, this concession would be fatal. Having had their day in court, these individuals could not relitigate the same claim through a representative any more than they could relitigate the same claim on their own behalf.

The EEOC argues that it is not in privity with the individuals on whose behalf it maintains ADEA actions because Congress intended the Commission to protect "a broader independent public interest different from that of an individual grievant." EEOC Br. at 19. Because that public interest "clearly is not identical to or coextensive with the interests of private litigants," the Commission argues, "no privity can be said to exist between the Commission and private litigants under the ADEA." EEOC Br. at 20. The Commission's description of its enforcement role under the ADEA is accurate and important, but this description fails to distinguish between the EEOC's role in protecting the public interest and its role in vindicating specific private claims.

While it is true that the Commission has the responsibility to protect a vital public interest that transcends the interests of any or all aggrieved individuals, we have concluded, for the reasons previously explained, that the Commission's responsibilities *include* the representation of these grievants when it seeks individual relief on their behalf. Thus, when the Commission seeks individualized benefits under the ADEA for particular grievants, as it did in this case, the Commission functions to that extent as their representative, and the doctrine of representative claim preclusion applies. We recognize that the Commission's role differs when it attempts to protect a broader interest by seeking to enjoin discrimination affecting an entire class, and we express no view regarding the question whether the doctrine of representative claim preclusion could bar individuals from sharing in the protection of an injunction that serves broader public interests.

■ The Commission relies on decisions by this and other courts of appeals holding that private litigation under federal antidiscrimination statutes does not preclude a subsequent EEOC suit based on the same claims. These decisions, the Commission suggests, demonstrate that it is not in privity with individual litigants who assert the same claims. This argument, however, sweeps much too broadly. Private litigation in which the EEOC is not a party cannot preclude the EEOC from maintaining its own action because private litigants are not vested with the authority to represent the EEOC. *See EEOC v. North Hills Passavant Hospital,* 544 F.2d 664 (3d Cir. 1976). *See also, e.g., EEOC v. United Parcel Service,* 860 F.2d 372 (10th Cir.1988); *EEOC v. McLean Trucking Co.,* 525 F.2d 1007 (6th Cir.1975); *EEOC v. Kimberly–Clark Corp.,* 511 F.2d 1352 (6th Cir.1975). But when the EEOC seeks to represent grievants by attempting to obtain private benefits on their behalf, the doctrine of representative claim preclusion must be applied.

In conclusion, we hold that individuals who fully litigated their own claims under the ADEA are precluded by res judicata

from obtaining individual relief in a subsequent EEOC action based on the same claims.[7] As the Commission concedes, the district court also erred in awarding interest to those individuals who previously settled their claims with USX. Accordingly, the judgment of the district court will be reversed insofar as it awards 70/80 pension benefits to those former employees who had fully litigated their claims and insofar as it awards prejudgment interest to those individuals whose claims had been previously settled.

---

7. *Cf. New Orleans Steamship Ass'n v. EEOC,* 680 F.2d 23 (5th Cir.1982); *Jones v. Bell Helicopter Co.,* 614 F.2d 1389 (5th Cir.1980); *EEOC v. Huttig Sash & Door,* 511 F.2d 453 (5th Cir.1975).